Abrams v Lawyers Group Adv., Inc. (2026 NY Slip Op 50320(U))

[*1]

Abrams v Lawyers Group Adv., Inc.

2026 NY Slip Op 50320(U)

Decided on March 16, 2026

Civil Court Of The City Of New York, New York County

Tien, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 16, 2026
Civil Court of the City of New York, New York County

David Abrams, Plaintiff,

againstThe Lawyers Group Advertising, Inc., Defendant.

Index No. CV-013817-13/NY

Plaintiff's counsel:Joshua Fingold, Esq. 
Fingold Law Firm PLLC575 Lexington Ave, 14th FL 10022Defendant's counsel:Andrew P. Saulitis , P.C.40 Wall Street , 37th FL.New York, New York 10005 

Alice Tam Tien, J.

Plaintiff commenced this action seeking to recover statutory damages against defendant for its alleged violation of the Telephone Consumer Protection Act of 1991 ("TCPA"), as amended by the Junk Fax Prevention Act of 2005 ("JFPA") pursuant to 47 USC § 227.
On January 27, 2026, this court conducted a bench trial. The parties were each represented by counsel. Plaintiff testified on his own behalf, and introduced six exhibits, marked as plaintiff's exhibit 1-6. Defendant presented one witness, Edward Malley, the former president of defendant.FINDINGS OF FACTRecitation, as required by CPLR 4213(b), of the finding of essential facts relied upon by the Court:Plaintiff David Abrams testified credibly that he is a solo practitioner and first heard of defendant in February of 2013. Plaintiff testified that on February 27, 2013, he received a call from defendant's sales representative, Ralph Dallas ("Dallas"), who talked to plaintiff about defendant's business of providing advertisements for attorneys. Plaintiff stated that he thought it "sounded like a scam," so he told Dallas that he was not interested and hung up. Approximately one to five minutes later, Dallas called plaintiff again. Again, plaintiff indicated that he was not interested and hung up the call with Dallas. Dallas then called plaintiff approximately three minutes later. According to plaintiff, after the third call, he received two three-page faxes from Dallas: the first set was received at 11:40 a.m. and the second set was received at 11:41 a.m. Plaintiff stated that he did not request the faxes nor did he want them. After receiving the faxes, plaintiff had another telephone call with Dallas, which plaintiff recorded. Plaintiff could not [*2]recall whether he called Dallas back for this conversation. During the final telephone call with Dallas, plaintiff testified that Dallas indicated that he sent the faxes to plaintiff because plaintiff called defendant's business a "scam." Plaintiff averred that he had never heard of defendant prior to these interactions.
Malley testified credibly at trial that defendant was in the business of producing custom advertisements for attorneys for several years. Malley indicated that he "got into the business" when an attorney in Denver approached him about helping him to produce an advertisement on his behalf. Malley stated that defendant ran its first advertisement "on the air" on June 8, 1992. He stated that he and his wife were defendant's co-principals until 2025 when defendant's business officially closed. According to Malley, Dallas was employed by defendant as a sale representative for approximately five years. When asked whether it was defendant's company policy to send unsolicited faxes, Malley responded that it was "never part of his business model" to do so unless an attorney requests it. Malley testified that he had no knowledge that Dallas had sent any faxes and believes it was "a one-off."

CONCLUSIONS OF LAW
It is a plaintiff's burden to establish their cause of action by a preponderance of the evidence. "The evidence must be of such weight as to produce a reasonable belief in the truth of the facts asserted; mere proof of a possibility is insufficient to establish a fact by a preponderance of the evidence" 8 Carmody-Wait 2d § 56:14.
The TCPA was expanded by the JFPA of 2005 to include facsimiles ("faxes"). The TCPA provides that in relevant part that it shall be unlawful for any person to:
"use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, . . ."47 USC § 227 (b) (1) (C)An "unsolicited advertisement" is defined as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission" (47 USC § 227 [a][5]).
With respect to "informational messages" via fax, the Federal Communications Commission ("FCC") elaborated on what constitutes an unsolicited advertisement, notably it stated that "facsimile communications that contain only information, such as industry news articles, legislative updates, or employee benefit information, would not be prohibited by the TCPA rules. An incidental advertisement contained in such a newsletter does not convert the entire communication into an advertisement . . . Thus, a trade organization's newsletter sent via facsimile would not constitute an unsolicited advertisement, so long as the newsletter's primary purpose is informational, rather than to promote commercial products" (71 Fed Reg 25967, 25973 [2006], codified at 47 CFR § 64.1200).
Upon consideration of the testimony of the parties, assessing their credibility, reviewing the documents in evidence, the court finds that plaintiff has presented sufficient proof of his claim against defendant. The court finds that plaintiff has established his prima facie burden by a preponderance of evidence that defendant violated the JFPA by sending two sets of faxes to plaintiff. Here, the faxes promote the commercial availability of services, specifically, advertisement for attorneys. The faxes contain defendant's name, pricing information, a letter from a satisfied customer of defendant's, and the faxes invite the recipient to call for further information with the purpose of encouraging the recipient to utilize defendant's services. Thus, [*3]the faxes fall within the ambit of the statute (see Rudgayzer & Gratt v Enine, 4 Misc 3d 4 [App Term, 2d Dept 2004]).
The TCPA further provides that a plaintiff may recover for actual monetary loss from such a violation, or receive $500 in damages for each such violation, whichever is greater (47 USC § 227 [b][3][B]). The statute also provides courts with discretionary authority to increase the award of damages to include treble damages, provided that the court finds that defendant willfully or knowingly violated the statute (47 USC § 227 [b][3]).
As to the measure of damages, the court finds that, while identical, defendant sent two sets of faxes consisting of three pages each. After the first 3-page fax was sent, there was a pause, and then a second, duplicative 3-page fax was sent. Consequently, plaintiff is entitled to recover damages in the amount of $1,000.00 constituting two violations of the JFPA.
Turning next to whether the violations were willful or knowing within the meaning of 47 USC § 227 (b) (3), the FCC has interpreted "willful and knowing" under the Telecommunications Act (of which the TCPA is a part), "as not requiring bad faith, but only that the person have reason to know, or should have known, that [their] conduct would violate the statute . . . " (Texas v American Blast Fax, Inc., 164 FSupp2d 892, 899 [WD Texas 2001]). Here, Malley testified that although defendant had fax machines, they had never used them for marketing purposes. He further testified that it was not part of defendant's "business model" to send faxes for marketing purposes and that he was not aware that Dallas had sent the faxes. It is uncontroverted that this was a "one-off" occurrence. Under the totality of the circumstances, plaintiff has failed to demonstrate that defendant, via Dallas, had reason to know or should have known that their conduct would violate the statute. Accordingly, the court, in its discretion, declines to award treble damages.

VERDICT
The court finds in favor of plaintiff in the amount of $1,000.00, plus interest from February 27, 2013.

 ORDER
Accordingly, it is hereby
ORDERED that plaintiff is entitled to a judgment in his favor against defendant The Lawyers Group Advertising, Inc., in the amount of $1,000.00, plus interest from February 27, 2013; and it is further
ORDERED, that plaintiff shall serve a copy of this order with Notice with Entry on defendant within ten (10) days of the date of entry.
This constitutes the decision, verdict and order of the court.
Dated: March 16, 2026Hon. Alice Tam Tien, JCC